John Kilvady, (Deceased) Helen D. Kilvady, (Widow) *v.* United States Steel Corporation et al. Commonwealth of Pennsylvania, Bureau of Workers' Compensation, Appellant.

Helen D. Kilvady, Widow of John Kilvady, Deceased *v.* Workmen's Compensation Appeal Board et al. United States Steel Corporation, Appellant.

Argued March 14, 1985, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Henry A. Riley,* Assistant Counsel, with him, *Paul A. Robb* and *Thomas D. Gould,* Assistant Counsels, for appellant, Department of Labor & Industry, Bureau of Workers' Compensation.

*Robert C. Jones,* for appellant, United States Steel Corporation.

*Bernard S. Shire,* with him, *Mark S. Galper, Shire & Bergstein,* for appellee, Helen D. Kilvady.

OPINION BY JUDGE DOYLE, August 1, 1985:

The Commonwealth of Pennsylvania, Bureau of Workers' Compensation (Bureau)[1] and the United States Steel Corporation (U.S.S.)[2] have filed notices of appeal from the order of the Court of Common Pleas of Westmoreland County which reversed an

---

[1] The Bureau is the appellant in No. 554 C.D. 1984.

[2] U.S.S. is the appellant in No. 640 C.D. 1984.

administrative denial of death benefits under The Pennsylvania Occupational Disease Act (Act).[3] These appeals have been consolidated for argument and this opinion will be dispositive of both.

Helen Kilvady (Claimant) filed a fatal claim petition on November 14, 1972 alleging that her husband, John Kilvady (decedent), died on January 17, 1972 from silicosis as a result of exposure to a silica hazard throughout the course of his employment with U.S.S. Decedent worked for U.S.S. from 1924 until November 8, 1957, when, due to the closing of his plant and to pulmonary problems, he left that employment. He came under the treatment of Dr. R. F. Kleinschmidt at some time before he left work and in July, 1957, Dr. Kleinschmidt diagnosed him as being totally disabled due to emphysema, glomerulonephritis and hypothyroidism. Dr. Kleinschmidt last examined decedent in 1966.

An autopsy performed by Dr. J. M. Brandon determined that decedent had been suffering from silicosis for some time prior to his death and that silicosis was the cause of his death. Dr. Brandon, however, was unable to determine if decedent became totally disabled from silicosis within four years after his separation from U.S.S. Subsequently, Dr. Brandon's autopsy report was reviewed by Dr. Kleinschmidt. As a result of that report, Dr. Kleinschmidt revised his 1957 diagnosis and concluded that decedent had been disabled by silicosis in 1957.

On June 22, 1976, a referee dismissed Claimant's petition concluding that she had failed to establish that decedent had been totally disabled from an occupational disease within a four year period after his last exposure to a silica hazard, and further concluded that his death had occurred more than four years

---

[3] Act of June 21, 1939, P.L. 566, *as amended*, 77 P.S. §§1201-1603.

after such exposure, thereby rendering Claimant ineligible for benefits under the Act. The Workmen's Compensation Appeal Board (WCAB) affirmed the referee's decision and also dismissed Claimant's appeal. On Claimant's further appeal, the common pleas court remanded the case to the WCAB with directions that the referee render a decision with findings of fact, conclusions of law and discussion setting forth the basis for the referee's conclusion that no compensable injury had been proven in light of Dr. Kleinschmidt's testimony giving due regard to that court's construction of Section 301(c) of the Act.[4]

The referee complied with the common pleas court's order, but again dismissed the claim petition, rejecting Dr. Kleinschmidt's testimony as being speculative. The WCAB affirmed the referee and dismissed Claimant's appeal. On appeal to the common pleas court, the court reversed the decision of the WCAB and remanded the case to the referee for a determination of benefits due Claimant. The common pleas court concluded that its prior holding with regard to Section 301(c) was the law of the case and held that the referee's characterization of Dr. Kleinschmidt's testimony as speculative constituted a capricious disregard of competent evidence.

On appeal to this Court, the Bureau and U.S.S.[5] contend that the common pleas court erred in holding

---

[4] 77 P.S. §1401(c). The common pleas court held that due to the lack of knowledge that decedent was suffering from silicosis until after his death, Claimant's fatal claim petition was not barred by Section 301(c) even though decedent's death occurred more than four years after his last exposure.

[5] Both the Bureau and U.S.S. addressed their briefs to both Commonwealth Docket numbers. The Bureau's brief was received and filed in this Court on April 18, 1984 with a copy to U.S.S. on the same date. U.S.S.' brief was received and filed herein on June 25, 1984. Our reading of these submissions reveals a remarkable resemblance between them.

(1) that the rejection of Dr. Kleinschmidt's testimony was a capricious disregard of competent evidence and (2) that the claim petition was not barred by Section 301(c). We will address the second question first.

Section 301(c) provides, in pertinent part, that "[w]herever compensable disability or death is mentioned as a cause for compensation under this act, it shall mean only compensable disability or death resulting from occupational disease and occurring within four years after the date of [the employee's] last employment in such occupation or industry." In applying these provisions, we have held that we must defer to the legislative limitations.

> Limitations, because they are arbitrary, are often harsh. The benefits of The Pennsylvania Occupational Disease Act, . . . are founded upon actuarial facts. There is unhappily a practical limit to the amounts of benefits employers and the public can provide. This limit must be established by the Legislature possessed of all the facts, not by a court deciding one case, however unfortunate.

*Gray v. Bethlehem Steel Co.*, 4 Pa. Commonwealth Ct. 590, 593-94, 288 A.2d 828, 829-30 (1972). The only circumstance which has been held by our appellate courts to be an exception to this general rule is when the decedent had filed a disability claim during the statutory period and the widow's claim was construed to be a continuation of the benefits awarded to the decedent during his lifetime. *See Toffalori v. Donatelli Granite Co.*, 157 Pa. Superior Ct. 311, 43 A.2d 584 (1945). Claimant, however, argues that we should expand that exception to permit her to file for death benefits some fifteen years after decedent's last exposure, notwithstanding the absence of a disability claim filed by her husband within the statutory period.

Analogizing Section 301(c) to Sections 311[6] and 315[7] of the Act and cases decided thereunder, claimant argues that because decedent did not know, and had no way of knowing, that he was suffering from an occupational disease during his lifetime, the statutory period of Section 301(c) should not begin to run until such time as the occupational disease is known by, or should have become known to, the person filing a death claim. In *Scobbo v. Workmen's Compensation Appeal Board,* 22 Pa. Commonwealth Ct. 109, 348 A.2d 169 (1975), we relied on *Roschak et ux. v. Volcan Iron Works,* 157 Pa. Superior Ct. 227, 42 A.2d 280 (1945), where the Superior Court, in consideration of the principles that the compensation laws for diseases are remedial and must be given broad and liberal interpretation and that the exact identity of the disease causing any patient's disability is often ascertained sometime after the onset of its symptoms, held the point of the beginning of the Section 311 notice limitations to be ''from the time the employee is disabled and definitely *knows* he is disabled *by the occupational disease.''* *Id.* at 234, 42 A.2d at 283. (Emphasis in original.) Our Supreme Court applied *Roschak* to Section 315 in *Ciabattoni v. Birdsboro Steel Foundry & Machine Co.,* 386 Pa. 179, 125 A.2d 365 (1956). Recognizing that Section 315 previously had been held to be a statute of repose, as had Sec-

---

[6] 77 P.S. §1411. Section 311 essentially creates a time frame for notice of disability to a liable employer within which compensation payments are either delayed or denied depending on the number of days which pass from the date on which a compensable disability begins and the date on which such notice is given.

[7] 77 P.S. §1415. Section 315 requires that the parties agree on compensation payable or that a claim petition be filed within a specified number of months after a compensable disability begins or a compensable death occurs on penalty of a permanent bar to the later filing of claims on such disability.

tion 311 prior to *Roschak,* the *Ciabottoni* court, followed the reasoning of *Roschak* and held Section 315 to be a limitation upon the *remedy* and not upon the *substantive rights* established by the Act. Although not without appeal, this argument fails to recognize that *Roschak preceded Toffalori* by approximately three months.[8] Undoubtedly, had the Superior Court not perceived some distinction between the purposes of Sections 301(c) and 311, it would have interpreted these measures consistently. Subsequently, the distinction was explained by Judge WRIGHT in *Moore v. Dodge Steel Co.,* 206 Pa. Superior Ct. 242, 213 A.2d 130 (1965) as the difference between the *right* to compensation under Section 301(c) and the *time within which that right* to compensation *must be asserted* under Section 315. Consequently, inasmuch as the occupational disease compensation system is a creation of the legislature, we cannot create a new right thereunder not provided by the legislature and, except for situations such as that in *Toffalori,* we must defer to the legislative determination that there can be no right to compensation where death from an occupational disease does not occur within four years after the date of the employee's last exposure. *Gray.* Section 301(c) must be interpreted, therefore, as a statute of repose and any change to the contrary must be left to the legislature.

Because of our resolution of the Section 301(c) issue, we need not determine whether the disputed testimony of Dr. Kleinschmidt was speculative. Accordingly, we reverse the order of the common pleas court and reinstate the order of the WCAB leaving to the legislature the question of the need for changes.

---

[8] *Roschak* was decided on April 26, 1945 and *Toffalori* on July 19, 1945.

ORDER IN 554 C.D. 1984

Now, August 1, 1985, on the appeal of the Commonwealth of Pennsylvania, Bureau of Workers' Compensation, No. 554 C.D. 1984, the order of the Court of Common Pleas of Westmoreland County, No. 3663 of 1983, is reversed and the order of the Workmen's Compensation Appeal Board is reinstated.

ORDER IN 640 C.D. 1984

Now, August 1, 1985, on the appeal of the United States Steel Corporation, No. 640 C.D. 1984, the order of the Court of Common Pleas of Westmoreland County, No. 3663 of 1983, is reversed and the order of the Workmen's Compensation Appeal Board is reinstated.

---

DISSENTING OPINION BY SENIOR JUDGE KALISH:

I respectfully dissent.

When the deceased retired, he was being treated by his physician, Dr. R. F. Kleinschmidt, for pulmonary emphysema. Silicosis was never diagnosed as the cause of his disability. It was only after his death and autopsy some twelve years after retirement that Dr. Kleinschmidt changed his diagnosis and concluded that silicosis was indeed the cause of decedent's disability which existed at the time of retirement. This widow then filed her death claim which was within the sixteen months of the date of death but beyond the four years from the date of his last employment. The only medical evidence presented was that of a Dr. J. M. Brandon, the pathologist, and Dr. Kleinschmidt. The referee concluded that there was no medical evidence to show that the decedent was disabled, reasoning that Dr. Kleinschmidt's testimony was speculative.

The issues involved are (1) did claimant make out a claim since she filed her petition more than four

years after the decedent's last employment with the employer[1] and (2) assuming she met that condition precedent or element of her right of action, was there an arbitrary disregard of her medical evidence by the fact finder.

Our well-recognized scope of review where the party with the burden of proof does not prevail before the fact finder is to determine whether there was an error of law and/or a capricious disregard of the evidence. *Britten v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 610, 426 A.2d 1253 (1981).

In interpreting section 301(c), the court in *Moore v. Dodge Steel Co.,* 206 Pa. Superior Ct. 242, 213 A.2d 130 (1965), indicated that the right of the widow to compensation under the Occupational Disease Act, is a separate cause of action, independent and not derivative from the right of her deceased husband. Thus, to create a right for the widow's claim, death must have occurred within four years of his last employment.

Yet, at the same time, the court recognized that its duty to construe the Act liberally presented problems, particularly recognizing that occupational diseases are often latent and insidious. Such injuries may not be discoverable until some time after the employment which has caused the injury has ceased. It cannot reasonably be said that the injury dates necessarily from the last date of exposure and that the period begins to run from that date. Rather, it begins to run after it is discoverable and *it becomes apparent that a compensable injury or disease* was sustained. *Cia-*

---

[1] Section 301(c) of the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1401(c) states, "compensation . . . shall mean only compensable disability or death . . . occurring within four years after the date of his last employment in such occupation or industry."

battoni v. Birdsboro Steel Foundry & Machine Co., 386 Pa. 179, 125 A.2d 365 (1956); Roschak v. Vulcan Iron Works, 157 Pa. Superior Ct. 227, 42 A.2d 280 (1945).

The same reasoning applies to a death claim arising out of an occupational disease. The right to a cause of action arises when it becomes apparent that a compensable injury was sustained. How, otherwise, could the widow possibly have known that she had a valid claim until it was discoverable? To hold otherwise would convert section 301(c) into a statute of repose, contrary to the intent of the legislature.

While it is true that the fact finder determines the credibility and weight of a witness's testimony, even when unrefuted, for the referee to consider Dr. Kleinschmidt's testimony as speculative when he was faced with no other conflicting medical testimony, and when the medical testimony was buttressed by the pathologist's autopsy report, was unreasonable and a capricious disregard of such testimony. One of ordinary intelligence could not possibly have avoided this evidence in reaching a result. *Britten.*