## Paul, etc., v. Johnstown Coal & Coke Company et al.

Before McCann, P. J., McKenrick and Griffith, JJ.

*Samuel R. DiFrancesco*, for plaintiff.

*Francis A. Dunn*, for defendants.

McCANN, P. J., September 24, 1948.—A claim petition was filed by Matilda Paul, widow, to recover compensation as a dependent widow under the Occupational Disease Act of 1939. In this petition she averred that the death of her husband on December 28, 1946, was the primary result of anthraco-silicosis, contracted while in the course of his employment with defendant company, Johnstown Coal & Coke Company.

Defendant answered, denying that Michael Paul, claimant's deceased husband, died of anthraco-silicosis, denying that the deceased was exposed to a silica hazard, denying the dependency of the widow, and pleading section 301(c) of the Occupational Disease Act as a further matter of defense.

The State Workmen's Insurance Board, custodian of the occupational disease fund, also filed an answer, denying claimant's allegation as to the cause of death and that decedent was exposed to a silica hazard for a period of five or more years so as to make the Commonwealth liable.

The record in this case shows that Michael Paul, decedent, in his lifetime filed a claim to recover compensation for disability under the Occupational Disease Act. The referee dismissed the petition under date of December 15, 1941, for the reason that decedent had not filed his petition within one year from the date of his disability. The Workmen's Compensation Board reversed this decision and remanded the case for further hearing and determination. Upon this hearing additional testimony was taken and the referee filed a decision on July 29, 1943, in which he found that decedent was totally disabled since December 4, 1940, as the primary and sole result of tuberculosis, and entered a disallowance of compensation. On January 28, 1944, the Workmen's Compensation Board affirmed this decision and dismissed the appeal. Decedent took no further appeal from this decision, and died on December 28, 1946. His widow then filed her claim, as hereinbefore stated, setting forth that her husband died as a result of anthraco-silicosis, contracted during his employment with defendant company, and as a result of exposure to a silica hazard.

The testimony discloses that decedent had been employed since 1929 in the mine of defendant company at Portage, Cambria County, Pa.; that he had been drilling slate and rock with an electric drill, and that this created dust in the atmosphere; that after four months at this work he performed the work of a motorman, operating a motor inside the mine, working at this continuously until March 1940, when he was employed outside of the mine because he was no longer

able to do his former work; that in the operation of the motor dry sand was used on the rails for traction purposes and particles of ground-up sand would fill the atmosphere and were breathed by decedent. The testimony establishes conclusively that he was, during all those years, exposed to a silica hazard. From March 1940 until December 4, 1940, when he was no longer able to do that work, he was employed as an outside watchman, this being work that required very little exertion. He was compelled to cease work entirely on December 4, 1940.

As before indicated, final action in the case was taken on January 28, 1944, upon decedent's petition, and no appeal was taken therefrom. He died December 28, 1946.

At the hearing before the referee, Dr. Charles H. Marcy, a specialist in diseases of the lungs, testified on behalf of claimant that on April 16, 1940, and again on February 10, 1941, X-ray and physical examinations were made. Dr. Marcy's diagnosis was "massive silicosis with a possibility of a superimposed pulmonary tuberculosis", although he was unable to prove the presence of tuberculosis. Five sputum tests were negative for tuberculosis. The doctor considered the patient to be permanently and totally disabled, due to silicosis. His interpretation of the X-rays taken at different times supported his diagnosis.

Defendant called Dr. R. S. Magee as its medical expert. He made a fluoroscopic X-ray and physical examination of claimant, and made a diagnosis of tuberculosis, attributing claimant's disability entirely to this cause and eliminated silicosis. A disinterested expert appointed by the board agreed with the diagnosis of Dr. Magee, physician for defendant, and the claim was disallowed.

Immediately after Michael Paul's death an autopsy was performed on the body of decedent by Dr. H. B.

Anderson, pathologist at the Mercy Hospital in Johnstown. The diagnosis resulting from the autopsy was as follows: "Anthraco-silicosis of the lungs, secondary emphysema of the lungs, chronic cor pulmonalae, and chronic passive congestion of the liver, spleen and kidneys." The only evidence of tuberculosis Dr. Anderson found at the autopsy was one small cavity, a small area in the right lung, which he attributed to a liquefaction necrosis, which was possibly tuberculosis originally. He testified that in his opinion the cause of death was anthraco-silicosis and that it had been of long standing.

There is no doubt that decedent was totally disabled after December 1940, when he ceased work for defendant company, and that he did no work thereafter. His condition at the time his petition was dismissed on January 28, 1944, showed total disability, the referee and the board finding that his disability resulted, not from silicosis, but from pulmonary tuberculosis. His condition became progressively aggravated until the time of his death. There is no doubt from the testimony in the case that defendant's physician and the disinterested physician appointed by the board were mistaken in their diagnoses, and that at the time his claim was dismissed it was improperly dismissed because of that mistake.

The question is whether or not this bars his widow from recovery under the doctrine of res adjudicata, and the fact that decedent's death occurred more than three years after his disability. Decedent died six years after his disability in the instant case.

Res adjudicata is only binding against the parties and their privies. Even though the rights of Michael Paul, deceased, and Matilda Paul, his widow, rise out of the same accident, the causes of action are separate and distinct. His claim was based on disability pay-

ments and her claim is based on a separate cause of action, namely, death benefits to a widow under the provisions of the Workmen's Compensation Act.

In Bouvier's Law Dictionary, under the subject of "res judicata", it is stated:

"The doctrine of res judicata is plain and intelligible, and amounts simply to this, that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by a new proceeding either before the same or any other tribunal; Foster v. The Richard Busteed, 100 Mass. 409."

Under the Workmen's Compensation Law a compensation award has no conclusive effect beyond the date of entry: Kilgore v. State Workmen's Insurance Fund et al., 127 Pa. Superior Ct. 213. In the case of Jankaitis v. Harleigh Brookwood Coal Co., 134 Pa. Superior Ct. 125, it was held that a compensation award in favor of employe, based on a finding that employe sustained an accident, was not res judicata in a widow's proceeding for compensation after the employe's death, on ground that employe sustained an accident, since there was no identity of persons or parties to the action or identity of the thing sued for. The case further holds that an employe's right to compensation, and right of his widow and children to compensation after his death, deal with two distinct funds and separate rights and involve two distinct parties and actions, and an adjudication in proceeding for disability is, when unappealed from within the time prescribed by statute, conclusive on employer in such proceeding, but is not conclusive on employer in the proceeding after the employe's death.

The most serious contention made by defendant in this case is based upon the argument that since the widow filed her claim after the three-year period from

the date of claimant's disability, she is barred by the provisions of the act from filing for compensation at this time. This argument is based upon the provisions of the Act of June 21, 1939, P. L. 566, sec. 301, subsec. (c), which reads as follows:

"Compensation for the occupational diseases enumerated in this Act shall be paid only when such occupational disease is peculiar to the occupation or industry in which the employe was engaged, and not common to the general population, and occurring within one year after the date of his last employment in such occupation or industry. Wherever death is mentioned as a cause for compensation under this Act, it shall mean only death resulting from occupational disease and occurring within three years after the date of his last employment in such occupation or industry."

The provision of the Act of May 18, 1945, P. L. 66, relating to the same subject (77 PS §1401(c)) provides identically the same as above quoted.

There is no decision that we can find that decides this particular question. However, in the case of Toffalori v. Donatelli Granite Co. et al., 157 Pa. Superior Ct. 311, we find this: Claimant filed a petition for compensation during his lifetime and compensation was allowed. Subsequently he died, his death having occurred three years and several months after the date of his total disability. After his death his wife filed a claim for compensation, claiming the balance of $3,-600. The defense in that case is identical with the defense here, that since death occurred more than three years after total disability the widow is barred from claiming compensation by reason of the provisions of the act above quoted. The Superior Court held that the widow's claim for the balance of the maximum compensation payable for total disability, and death from silicosis, was not barred because death occurred more than three years after decedent's last employment since

death was not a "cause for compensation" to the widow within the statute limiting death as a cause for compensation to death resulting from occupational disease and occurring within three years after last employment. The Superior Court in that case stated that death is not the "cause for compensation" within the section of the Occupational Disease Act limiting death as cause for compensation to death resulting from occupational disease and occurring within three years after last employment, where no claim is made during employe's lifetime for compensation for disability and the first claim for compensation is filed after employe's death. The Superior Court further stated that the three-year limitation from date of last employment was intended to prevent stale claims, and not to bar dependents from recovering balance of compensation previously awarded on a prompt claim. In our opinion, the Superior Court interpreted this section to mean that it was intended to prevent stale claims and not to bar recovery where the claim had been promptly made, when all the facts were known.

In the instant case the Workmen's Compensation Board made an award to claimant on the ground that the cause of death was anthraco-silicosis, and that the claim was properly presented within the time provided by the act. The fact that in this case the husband, as it turned out, was unjustly deprived of compensation, although this was all done in good faith, does not constitute a stale claim, but a claim that was properly filed within one year from the death of claimant's husband as provided for in the Compensation Law.

The Workmen's Compensation Board, in referring to section 301 of the Occupational Disease Compensation Act heretofore cited, said:

"We are reluctant to hold that this language of the act precludes a recovery in the case. The purpose of the act is clearly to prevent stale claims. It is an un-

fortunate result, in the instant case, that it operates to prevent a meritorious claim. We had occasion to consider the applicability of the language of the section in question in the case of Toffalori v. Donatelli Granite Company, A-29727, cross appeal 29731 (board 1944). We held that widow claimant was not barred from filing her separate and independent claim for compensation more than three years after the date of her decedent's total disability as decedent's claim for compensation had been recognized and payments made to him during his lifetime. . . . The Superior Court, in the Toffalori case, 157 Pa. Superior Ct. 311, affirmed our view. The appellate court distinguished the case before it from Meyers v. Moxham Coal Company, 293 Pa. 7, in that the claim petition in the Meyers case filed after the expiration of the statutory period, was an original claim and the 'cause of compensation' was death. The court said (p. 314):

" 'But in the instant case, the claim petition was not an original claim. The original claim had been filed by the decedent during his lifetime and the "cause for compensation" was total disability, not death. Upon this claim, compensation had already been paid. The present petition was in effect a claim for *continuation* of the payments of compensation that had already been awarded for total disability. . . .

" 'Since the petition was not an original claim, and since death was not the cause for compensation, the claim was not barred. In our opinion the words of section 301 (c) "Wherever death is mentioned as a cause for compensation . . ." are applicable in a case where no claim is made during the employee's lifetime for compensation for *disability*. In such a case, where the first claim is filed after the employee's death, *death* is the cause for compensation. If the employee dies more than three years after the date of his last employment, the claim is barred.'

"Here, a claim petition was filed by the employe, but after mesne proceedings, it was disallowed. There was error in the disallowance as subsequent events established that decedent was suffering from anthraco-silicosis and not tuberculosis. This was shown by post mortem. Medical opinion is generally in agreement that the presence of silicosis can best be established by autopsy. The posting confirmed the original diagnosis of anthraco-silicosis of Dr. Marcy, claimant's witness, which had been rejected by the compensation authorities in the light of contra opinion from defendant's medical expert and an impartial physician appointed by the board. It would be unjust to persist in a refusal of compensation where the evidence is convincing that death was due to an occupational disease incurred in the course of defendant's employ, if such a miscarriage of justice can be avoided. From the language of the Toffalori case, we believe that the filing of the claim petition by Paul tolls the statute in favor of the widow's right to file a claim in her own name for his death. We held earlier that the employe filed his claim petition within the one-year period. While the widow's claim is for death as the cause of compensation, her right necessarily remained inchoate until the death occurred. A silicotic condition does not improve. Since decedent was removed from the hazard after 1940, it is only logical to assume that the silicotic condition found at autopsy was present at the date he ceased work for defendant. It seems to us that higher humanitarian grounds require an award to the widow for the death. In so deciding, we can, in part, correct the injustice in denying decedent compensation in his lifetime."

The conclusion of law arrived at by the board was as follows:

"Having found that decedent filed an original claim petition for total disability as a result of anthraco-

silicosis incurred in the course of his employment by defendant, Johnstown Coal and Coke Company, we conclude that claimant is thereby not barred from filing her separate and independent claim petition for her decedent's death more than three years after the date of decedent's last employment in an occupation having a silica hazard."

The board accordingly made an award to Matilda Paul. We are of the opinion that the Workmen's Compensation Board properly disposed of this case, and we therefore dismiss the exceptions to the decision of the Workmen's Compensation Board and affirm its award.

### Decree

And now, September 24, 1948, after argument and due consideration, the appeal is dismissed and the prothonotary is directed to enter judgment in favor of Matilda Paul, claimant, and against defendants, Johnstown Coal & Coke Company and State Workmen's Insurance Fund, in the amount of $3,600, the court hereby awarding to Matilda Paul, claimant, widow of Michael Paul, decedent, and against Johnstown Coal & Coke Company and the Commonwealth of Pennsylvania and/or State Workmen's Insurance Fund, defendants, compensation at the rate of $12 per week, beginning December 28, 1946, not to exceed $3,600, within the limitations of the act.

Defendants are further directed to reimburse claimant in the amount of $200 on account of funeral expenses incident to the burial of decedent.

Defendant employer shall be liable for, and pay 50 percent of the compensation above awarded and the Commonwealth of Pennsylvania 50 percent thereof.

Defendant company is further directed to pay to Dr. H. B. Anderson the sum of $5.